## Ball Trust

*Sporkin & Baran* and *Paul J. Foley*, for exceptants.
*Paul Maloney* and *Raymond K. Denworth, Jr.*, contra.

### ADJUDICATION

SAYLOR, J., April 25, 1966.—This trust arises under an inter vivos deed dated December 18, 1943, by which

L. G. Ball transferred the assets therein set forth to his trustees upon provisions which will be more fully discussed below.

The accountants were appointed as follows: C. M. Johnson was appointed trustee by the deed of trust. C. E. Cowan, one of the original trustees, resigned on December 7, 1948, and Fidelity-Philadelphia Trust Company was appointed substituted trustee, in accordance with the terms of the deed of trust.

The account has been filed for confirmation and because a petition was filed seeking reformation of the deed of trust.

The first question concerns the fact that the account includes numerous stock dividends of six percent or less which have been retained in principal. It is the position of trustees that these stock dividends, with further stock dividends and splits thereon, should be transferred to the income account and distributed to the parties entitled to receive the income when said dividends were received by trustees.

The position of trustees is in accordance with the decision in Pew Trust, 411 Pa. 96 (1963), in which the Supreme Court held that in trusts created prior to the Uniform Principal and Income Act of May 3, 1945, P. L. 416, stock dividends of six percent or less are income in the absence of a clear expression to the contrary by the creator of the trust. Distribution will be made accordingly.

The other question presented for adjudication arises because L. G. Ball, settlor, has filed a petition for citation on Fidelity-Philadelphia Trust Company, co-trustee, and Lila Rathwell, one of the life income beneficiaries, to show cause why the provisions of the deed of trust should not be reformed so that three fourths of the principal of the trust may be distributed at this time.

C. M. Johnson, a trustee, consented to the petition

and joined in the prayer thereof. Fidelity-Philadelphia Trust Company opposed the petition.

By decree entered December 27, 1965, Raymond K. Denworth, Jr., Esq., was appointed guardian and trustee ad litem for the minors named and the interests designated in the decree of his appointment. He appeared at the audit on January 3, 1966, and at the hearing on January 10, 1966, and has filed a report wherein he joins the Fidelity-Philadelphia Trust Company in opposing the reformation of the deed.

The threshold question which must be determined before going into the merits of this matter is whether or not a settlor who seeks reformation of a deed of trust prepared for him by an attorney or attorneys may invoke the attorney-client privilege to exclude from the record any communications between himself and such attorneys when he is relying on a breakdown in those communications as grounds for reformation.

The attorney-client privilege exists as a matter of statute in Pennsylvania: Act of May 23, 1887, P. L. 158, sec. 5 (d), 28 PS §321, and reads as follows:

"Nor shall counsel be competent or permitted to testify to confidential communications made to him by his client or the client be compelled to disclose the same, unless in either case this privilege be waived upon the trial by the client".

In the instant case, settlor's position is that the deed as presently drawn is the result of a mistake. He maintains that his intention at the time the deed was drafted was that three fourths of the principal of the trust should be paid to his sons at age 35, provided their mother, settlor's wife, was then dead, or upon her death if they should all then be of the age of 35 or over. But the deed does not provide for distribution of principal until settlor's wife and settlor are both dead. The mistake alleged, then, is a mistake on the part of one of the attorneys as scrivener in in-

correctly drafting the deed. From this, it can easily be seen that the sole issue here is whether or not the draftsman carried out the intent of settlor as communicated to him by settlor. Yet it is the communications between settlor and draftsman which settlor seeks to exclude.

Counsel for settlor in his brief cites Alexander v. Queen, 253 Pa. 195 (1916), as authority in support of his position. In that case, it was held error for the court to have permitted an attorney-draftsman to testify as to what his client, now deceased, had told him concerning his intent to hold certain assets in trust. It was the opponent of the client who sought to introduce the attorney-client communications. The same is true in Cridge's Estate, 289 Pa. 331 (1927), also relied upon by settlor. But in the instant case, it is settlor himself who opens the door to such testimony by alleging mistake on the part of the draftsman-attorney. By so doing, he waives the right to rely on the attorney-client privilege. To hold otherwise would be to permit any settlor of an irrevocable inter vivos trust to reform the deed of trust merely by reciting that the draftsman failed to follow his instructions, and then objecting to the court's examining those instructions to test the truth of settlor's allegation.

A leading case in Pennsylvania on reformation of trusts is La Rocca Trust, 411 Pa. 633 (1963). There the Supreme Court stated that parol evidence was admissible to establish a mistake by a scrivener. At page 639, the court said:

"However, the evidence required to reform a written instrument must be clear, precise, convincing, and of the most satisfactory character. . . ."

The evidence in this case does not come up to that standard. Settlor, who was at the time the deed was executed a very capable businessman, testified that he read the deed before signing it. The provision of

the deed here under attack is not couched in obscure terms beyond the comprehension of a layman. That reads:

"Upon the death of Settlor and the death or remarriage of Settlor's wife. . . ."

Settlor admitted at the hearing that such a phrase, upon normal reading, would require that upon his death and upon the death of his wife, distribution of principal would be made. He further admitted that he did read it that way in 1943.

Settlor further testified that he first became aware that the deed postponed distribution until his death when his wife died in 1964. Yet there was in evidence a letter from a vice president of Fidelity-Philadelphia Trust Company to settlor dated April 17, 1957, in which settlor was informed that "the person who will take the principal of the Trust cannot be determined until after the death of both you and Mrs. Ball . . ."

It should be noted that none of the above evidence could be objected to as not admissible because of attorney-client privilege, even if petitioner's position on that question had been sustained. The above evidence alone is sufficient to cause the court to deny the petition for reformation.

There was admitted in evidence, subject to objection, a writing from settlor to his draftsman some time prior to the execution of the deed, in which he instructed his draftsman with the phrase:

"After the death of my wife and myself the principal to be distributed . . ."

This writing is properly admissible, and it removes any remaining possibility of mistake. The petition for reformation is denied.

And now, April 25, 1966, the account, except as above set forth, is confirmed nisi.

OPINION SUR EXCEPTIONS TO ADJUDICATION

BOLGER, J., July 29, 1966.—The exceptions relate to

the refusal of the auditing judge, sitting as chancellor, to reform an irrevocable deed of trust dated December 18, 1943. Exceptants are settlor and three of the life tenants. A fourth life tenant, the corporate trustee, and the guardian and trustee ad litem opposed the petition for reformation. In their petition, exceptants averred that there was a mistake made by the scrivener-attorney in inserting in the deed a provision that the trust should not terminate not only until the death or remarriage of settlor's wife, but also until the death of settlor.

In his testimony at the hearing, settlor apparently dropped the charge of mistake against the scrivener and relied upon the unilateral mistake of his own that, although he read, understood and signed the deed, it was his *intention* not to include his life as one of the measuring rods for the duration of the trust. Since his wife has died, he seeks reformation and a decree partially terminating the trust.

After settlor had testified as to his intentions at the time of the creation of the trust, the opponents to the petition were permitted, on cross-examination, to introduce into evidence writings from the files of settlor's then counsel. In one of these writings, settlor directed that his own death was to be one of the conditions of termination. Settlor objected to the introduction of this and other communications between settlor and his counsel on the ground that they are confidential communications between attorney and client. He was overruled, and the writings were admitted into evidence. This action of the chancellor and his decree dismissing the petition constitute the gravamen of our present issue. We are unanimously of the opinion that the chancellor was correct in his rulings on both the facts and the law.

Exceptant objects strenuously to the admission into evidence of a letter from settlor in his own handwrit-

ing to his counsel dated December 9, 1943. That letter contains the following words of instruction:

"After the death of my wife and myself the principal to be distributed among my children on the same basis as the income is divided. . . .

"Of course, in case of my wife's death before mine, I want her share of income to be divided among the children".

On direct examination, settlor testified as to his intentions, and the following testimony was elicited:

"Q. You testified that your attorney at the time of the creation of this deed of trust was Mr. Pennypacker. Is that correct?

"A. That is right.

"Q. To the best of your knowledge and recollection did you communicate your intentions to him?

"A. Yes. I thought I had told him everything that I wanted".

The attorney-client privilege is recognized by statute in Pennsylvania: Act of May 23, 1887, P.L. 158, sec. 5(d), 28 PS §321, but the protection from disclosure may be waived by the client. Of course, an express waiver is a rare case, but an equally effective implied waiver may be found. Where, as here, the client offers testimony on part of the communications with his counsel, he waives the privilege with respect to all other communications with his attorney on the same matter: 8 Wigmore, Evidence (McNaughton rev. 1961), §2327, note 3.

The learned auditing judge is sustained in his conclusion of law that settlor waived his attorney-client privilege when he testified on direct examination as to the events and communications between himself and his counsel. Having waived that privilege, the letter of December 9, 1943, was properly admitted into evidence.

It should also be noted, with respect to the admissibil-

ity of this letter, that when a litigant seeks relief in equity, he is appealing to the discretion of the chancellor. He must not only come in with clean hands, but also owes a duty of full and frank disclosure to the court, and he invests the court with the power and the duty to demand such disclosure. By seeking to prevent the letter of December 9, 1943, from being received into the evidence, settlor has sought to have the court render a decision with only part of the facts before it, thus falling short of his duty of full and frank disclosure. Regardless of the technical admissibility or nonadmissibility of the correspondence, petitioner must see that the chancellor is fully informed if he wishes him to exercise his discretion.

The finding by the auditing judge that there was no mistake on the part of settlor must be sustained, since it is supported by competent and adequate testimony: Pavlinko Estate, 399 Pa. 536 (1960). There is not a semblance of doubt that the testimony in support of the petition does not measure up in any degree to the necessary requirements. It must be "clear, precise, convincing, and of the most satisfactory character": La Rocca Trust, 411 Pa. 633 (1963). Generally, we are cognizant of the tenderness with which courts of equity traditionally regard attempts by settlors to reform deeds of trust because they are usually voluntary, not contractual, transfers of settlor's property: Cobaugh Trust, 39 D. & C. 2d 175 (1966). However, it must also be pointed out that when transfers in trust are made, other interests in the property are created, and these interests are also entitled to protection. As stated by President Judge Klein in Cobaugh Estate, supra, "The execution of an irrevocable deed of trust is a solemn, binding act. It cannot be rescinded lightly. It can only be set aside or altered for compelling reasons".

The subtle ground advanced by exceptant is that it was settlor's intention that the trust be terminated

upon the death of his wife and was not to be measured by his own life. Settlor admits that he did not communicate this intention to the scrivener. The mistake which he relies upon is his own in that he failed to express to the scrivener what his true intentions were. Thus, his intention remained subjective and unexpressed.

Settlor does not deny that he wrote to his lawyer specific instructions in the letter discussed above. He admits that he read and understood the deed of trust before he signed it and that it conformed to his written instructions. He now testifies, however, it did not then, nor does it now, express what he intended, namely, that his wife's life and not his own was to determine the duration of the trust.

The auditing judge appears to have believed that this reserved intention was an afterthought of recent origin, because settlor took no action or made no critical comment when, in 1957, the trustee reminded him that the termination of the trust could occur only upon the deaths of himself and his wife, and again in 1964 upon the death of his wife. The findings by the auditing judge are not capricious or arbitrary, but are such as we would make had we been in his place. When sitting as chancellor, the findings of the auditing judge can be disregarded only in a clear case: Belmont Laboratories, Inc. v. Heist, 300 Pa. 542 (1930); Roberts Estate, 350 Pa. 467 (1944).

The best expression of a settlor's intention and what law and equity must rely upon are those set forth expressly in the deed. The deed of trust under consideration specifies in four different paragraphs that settlor's death is its measuring rod.

"C. Upon the death of Settlor and the death or remarriage of Settlor's wife . . .

"If any such son living at the death of Settlor and the death or remarriage of Settlor's said wife . . .

"(2). If Settlor's daughter Lila Ball Rathmell, shall be. living at the death of Settlor and at the death or remarriage of Settlor's wife . . .

"(3)' One equal share of the principal of said trust estate shall be transferred and paid over by the Trustees to the descendants living at the death or remarriage of Settlor's wife . . ."

This is not a case where an omission or poor advice is alleged; the mistake alleged is a contradiction of the terms or phraseology of the deed, the language of which is as clear and plain to a layman as to a lawyer, and which settlor testifies he understood. Absent fraud or mistake, the terms of a written instrument cannot be varied by parol evidence: Gianni v. R. Russell & Co., Inc., 281 Pa. 320 (1924). Settlor has shown no mistake on his part, having testified that, as pointed out above, he read and understood the deed before he signed it.

This record reveals a shifting in exceptant's conduct which, we are satisfied, places a cloud of suspicion upon the whole proceeding. As stated, petitioner averred a mistake on the part of the scrivener which, if sustained, might well have required a finding in his favor. However, we must take notice that when this averment was denied in the answers, petitioner shifted his ground and advanced the proposition that the mistake was not that of the scrivener, but was the unilateral error of settlor.

There is an additional reason why petitioner is not entitled to the relief he seeks. As pointed out, he was made aware (if he did not already know) as long ago as 1957 that his death was a condition of the termination of the trust. This information was given him in response to his inquiry concerning a loan from the trust to one of the life tenants, who is also a contingent remainderman. He had proposed that the loan be considered an advance on that life tenant's share of principal. Trustee informed him that no such loan could be

made because it was impossible to tell until the death of both settlor and his wife who would be entitled to share in the principal. Therefore, at least eight years had passed before settlor made any effort to reform the deed. Such delay operates as a bar to the equitable relief sought by petitioner. See Harding v. Harding, 305 Pa. 572 (1932), where a settlor lost a right of rescission by reason of a delay of 13 years in enforcing that right. Acquiescence is presumed.

The record reveals that the guardian and trustee ad litem questioned at the hearing, which included the audit of the trustees' account, the propriety of trustees' lending the sum of $165,000 to Robert W. Ball, one of the life tenants. The auditing judge refused to pass upon the merits of this objection because of what he termed the impracticability of determining the exact sum involved. No exceptions were taken to this action and, therefore, the question is not now before us. However, we are constrained to suggest to all of the parties that because of the spendthrift provisions of the trust as to both principal and income, the propriety of the loans and the effectiveness of all of the precautions taken to protect trustees are possibly of dubious validity.

For the foregoing reasons, the exceptions are dismissed and the adjudication is confirmed absolutely.