J-E02005-18

2019 PA Super 95

| | | |
|---|---|---|
| IN RE: PASSARELLI FAMILY TRUST | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: JOSEPH PASSARELLI | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3150 EDA 2016 |

Appeal from the Decree September 19, 2016
In the Court of Common Pleas of Chester County Orphans' Court at
No(s): 1516-0101

BEFORE: GANTMAN, P.J., BENDER, P.J.E., PANELLA, J., SHOGAN, J.,
LAZARUS, J., STABILE, J., DUBOW, J., NICHOLS, J., and
McLAUGHLIN, J.

OPINION BY LAZARUS, J.:                                    **FILED MARCH 28, 2019**

Joseph Passarelli ("Joseph") appeals from the decree, entered in the Orphans' Court Division of the Court of Common Pleas of Chester County, granting the petition of Appellee, Margaret Passarelli ("Margaret"), to terminate an irrevocable trust ("Trust"). Upon careful review, we reverse.

The following facts and procedural history have been adopted from the findings of fact contained in the Decision of the Orphans' Court filed September 16, 2016, as well as our own review of the record. Joseph and Margaret Passarelli were married on November 27, 1998, and have two minor children.[1] In the Spring of 2015, Margaret agreed with Joseph to meet with an attorney, Michael Perna, Esquire, to discuss estate planning. Margaret was unaware

---

[1] The Passarelli children are represented in this appeal by a guardian *ad litem*, who filed a participant's brief advocating for vacatur of the Orphans' Court's order.

that Joseph had previously met with Attorney Perna and only learned of their pre-existing relationship shortly before the execution of the estate planning documents. During this time period, Margaret was facing a possible cancer diagnosis and was emotionally upset.

Attorney Perna prepared various documents, including powers of attorney and wills, as well as the Trust, at Joseph's direction. On May 21, 2015, Margaret and Joseph met with Attorney Perna to execute the documents. The irrevocable trust agreement included a schedule of assets, compiled by Joseph, to be conveyed to the Trust. The schedule included two property companies known as Japen Holdings, LLC, and Japen Properties, LLP (collectively, "Japen").[2] *See* Trust, 5/21/15, Schedule A. Prior to execution, Margaret did not ask about the inventory of assets, nor did she read the trust documents. Margaret did, however, inquire as to the disposition of trust assets in the event of divorce and was informed by Attorney Perna that the Trust would survive a dissolution of the couple's marriage.

The Trust named Joseph and Margaret as Settlors and Joseph as Trustee. The document named Settlors and their two minor children as discretionary income beneficiaries during the lifetime of the Settlors. The Trust also authorized discretionary distributions of principal to Settlors and/or their children for support, health, comfortable maintenance, education, and

---

[2] These businesses were acquired during the marriage with marital property, and were titled in Joseph's name. The businesses were valued at a combined amount of $4,200,000.00. *See* Trust, 5/21/15, Schedule "A."

general welfare. The Trust further provided that, at the death of Settlors, the Trust would continue for the benefit of the children and their living issue.

Sometime after executing the Trust, Margaret discovered that Joseph, through Japen, had purchased two properties in Florida (the "Properties") without her knowledge and had included these properties in the corpus of the trust, via Japen. In September 2015, Margaret discovered Joseph was having an extra-marital affair and filed for divorce. She also discovered that Joseph's girlfriend was living in one of the Properties. In October 2015, Margaret filed, in the divorce action, an emergency petition for special relief to prevent dissipation of marital assets. In December 2015, the divorce court froze fifty percent of certain accounts included in the corpus of the trust.

On January 19, 2016, Margaret filed, in the Orphans' Court, a petition to terminate the Trust pursuant to 20 Pa.C.S.A. §§ 7736 and 7740.6. The court held an evidentiary hearing and subsequently issued findings of fact and conclusions of law. The court found that Joseph had concealed the fact that he purchased the Properties with marital assets and had failed to disclose that fact at the time of the Trust's execution. The court further found that Margaret would not have agreed to execute the Trust had she known about the existence of the Properties. As a result, the court concluded that Margaret had met her burden of proving fraudulent conduct by Joseph and dissolved the Trust.

Joseph timely appealed and a divided three-judge panel of this Court reversed. On November 29, 2017, Margaret filed an application for

reargument en banc, which this Court granted on January 12, 2018. Joseph

raises the following questions for our review:

1. Whether a finding of fraud may be premised upon a failure to identify each asset contributed to a trust?

2. Whether non-disclosure of an asset conveyed to a trust can be construed as fraudulent misrepresentation where[:] (a) the complaining party had no present interest in the asset conveyed to [the] trust[;] (b) the asset became part of the trust[;] and (c) the complaining party received a benefit from the asset conveyed to the trust[?]

3. Whether non-disclosure of $470,000 of assets conveyed to a trust is material where the assets made part of the trust total $14,600,000[?]

4. Whether a trust agreement should be terminated premised upon fraud where the alleged victim professes to have never read the instrument but it conferred upon the alleged victim a tangible benefit consistent with the estate planning goals she sought to achieve?

Substituted Brief of Appellant, at 3-4.

Joseph first asserts that the Orphans' Court erred in finding Margaret

proved Joseph fraudulently induced her to execute the trust agreement

because he failed to disclose the existence of the Properties. The Orphans'

Court found that Joseph concealed the fact that he was having a long-term

extra-marital affair and had used marital assets to purchase and maintain a

Florida home for his girlfriend. The court concluded that Margaret would not

have executed the trust if she had been aware of those facts. Joseph argues

that trust law imposes no duty to disclose each and every asset contributed

- 4 -

to a trust and that Margaret failed to establish the requisite elements of fraud. For the following reasons, we agree.

"A trust arises when, by a sufficient declaration of its terms, the three following elements concur:  sufficient words to create it, a definite subject matter, and a certain or ascertained object." ***Pugh v. Gaines***, 41 A.2d 287, 288 (Pa. Super. 1945).

> Generally, a trust executed without reservation of power by a settlor to revoke or reform the trust is irrevocable. ***See Harding v. Harding***, 158 A. 253 ([Pa.] 1932).  An irrevocable trust may be rescinded by the settlor, however, if it is demonstrated that the trust was created through fraud, duress, undue influence, or mistake. ***Id.***

***Rebidas v. Murasko***, 677 A.2d 331, 333 (Pa. Super. 1996).  The evidence required to substantiate a request for rescission must be clear, precise, and convincing.  ***In re Trust Estate of LaRocca***, 192 A.2d 409, 412 (Pa. 1963). The credibility and weight accorded to the testimony and witnesses will not be disturbed except for clear error.  ***Id.*** at 413, citing ***Harbison Estate***, 76 A.2d 187 (Pa. 1950).  Where the rules of law on which the Orphans' Court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree. ***In re Estate of Zeevering***, 78 A.3d 1106, 1108 (Pa. Super. 2013).

Here, Margaret sought recission of the Trust on the basis that its creation was fraudulently induced by Joseph because he failed to include the Properties in Schedule A.[3]  In reaching its decision to rescind the Trust, the

---

[3] In her petition to terminate the trust, Margaret also alleged claims of duress, undue influence and mistake.  She subsequently abandoned those claims in the Orphans' Court, which grounded its ruling solely on the issue of fraud.

Orphans' Court adopted the definition of fraud applied by this Court in **In re Estate of Glover**, 669 A.2d 1011 (Pa. Super. 1996). The Orphans' Court characterized this definition as requiring proof that: (1) the testator had no knowledge of the concealed or misstated fact, and (2) the testator would not have made the same bequest had she known the truth. **See** Orphans' Court Decision, 9/16/16, at 4. Applying this standard to the evidence presented in the instant matter, the Orphans' Court concluded as follows:

> [Margaret] testified credibly that she had no knowledge of the purchase of the [Properties] with marital assets on May 1, 2015. [Joseph] admitted that at the relevant time, the date [Margaret] executed the Trust, [Margaret] had no knowledge of his purchase of the [Properties]. [Joseph] suppressed the existence of the [Properties] to [Margaret]; the list of real property identified on Schedule A omits these properties as well. [Margaret], however, understood the Trust to encompass all of their marital property at the time. By failing to disclose the information [to] [Margaret,] she did not, and could not[,] know[] exactly what assets or issues were really on the table as part of the transaction.

> [Joseph's] failure to disclose the purchase, and existence, of the [Properties] was an act of fraud intended to induce [Margaret] to execute the Trust document he wanted and created. Whether one labels his action a suppression of the truth or a suggestion of what is false by silence, the result is the same—the fraudulent inducement of [Margaret] to execute the Trust. As the Supreme Court has explained, "[t]he concealment of a material fact can amount to culpable misrepresentation no less than does an intentional false statement." **Moser v. DeSetta**, [589 A.2d 679, 682 (Pa. 1991)].

Orphans' Court Decision, 9/16/16, at 5-6.

We find the court's application of the two-part test for fraud set forth in **Glover** to be misplaced. As **Glover**'s definition of fraud is grounded in the

Supreme Court's decision in ***In re Paul's Estate***, 180 A.2d 254 (Pa. 1962),

a review of each case is in order.

***Paul***, a 1962 decision of our Supreme Court, involved an appeal from

probate by residuary legatees, who alleged that the scrivener of the testatrix's

will, also a beneficiary thereunder, had exerted undue influence upon the

testatrix. ***See id.***, 180 A.2d at 256 ("The sole issue in the court below was

whether [scrivener] had exerted undue influence upon the testatrix[.]"). The

legatees contended that the scrivener, "occupying a confidential relationship

to testatrix, by the exercise of fraud, misrepresentation and concealment,

unduly influenced the testatrix" to make a bequest of stock to him, by leading

her to believe that the stock was worth substantially less than its actual value.

***Id.*** The Court noted that, as the testatrix suffered from no mental infirmity

but a large part of her estate was left to someone in a confidential relationship

to her, the burden rested with contestants to prove undue influence.[4] ***See id.***

---

[4] We note that this test for undue influence somewhat conflicts with both earlier and subsequent precedent of the Court addressing this issue. That standard, employed to this day, requires the application of a three-part test to determine whether a presumption of undue influence arises. Specifically, a contestant is required to prove, by clear and convincing evidence, that: (1) the proponent of the will was in a confidential relationship with the testator; (2) at or around the time of execution, the testator had a "weakened intellect"; and (3) the proponent receives a substantial benefit under the will. ***See Estate of Clark***, 334 A.2d 628 (Pa. 1975). Similarly, earlier cases applied a nearly identical test. In ***Boyd v. Boyd***, 66 Pa. 283, 293 (1871), the Court characterized the undue influence inquiry as follows:

> [W]here, . . . an entire stranger—having no claims from lawful relationship—, . . . derives a very _considerable benefit_ from the

at 257.   There being no dispute that the scrivener enjoyed a confidential

relationship with the testatrix and received a large part of her estate, the Court

distilled the legatees' remaining burden to the following:

> Appellants' argument requires that four propositions be sustained:
> (a) that the true value of the stock was $800, not $50, per share;
> (b) that [scrivener] knew this true value; (c) that, by fraud and
> misrepresentation,  [scrivener]  concealed  the  true  value  from
> testatrix and lulled her into believing that, on the basis of a $50
> per share value, she was bequeathing [scrivener] less than 3% of
> her estate; (d) that had testatrix known the true value of the . . .
> stock which represented approximately 33% of her gross estate
> she would not have made this bequest.

*Id.* at 261.

After examining the record, the Court concluded that the legatees had

established the first three propositions, i.e., that (1) the stock had a value of

approximately $800 per share during the relevant period; (2) the scrivener

was aware of the true value of the stock; and (3) there was, in the record,

_____

> act, . . . direct proof ought not to be, and is not required. . . .
> General evidence of power exercised over the testator, especially
> if he be of comparatively _weak mind_ from age or bodily infirmity,
> though not to such an extent as to destroy testamentary capacity,
> will be enough to raise a presumption, which ought to be met and
> overcome before such a will can be established.  Particularly ought
> this to be the rule when the party to be benefited stands in a
> _confidential relation_ to the testator.

*Id.* at 293 (emphasis added).  Thus, the test employed in **Paul**, which omitted
any requirement that a contestant demonstrate that the testator suffered from
a weakened intellect, is not in harmony with the law as it existed for nearly
one hundred years prior to the date **Paul** was issued by the Court, and as it
has existed in the years since.

evidence that the scrivener provided misinformation to the testatrix as to the value of the stock. However, the Court ultimately concluded that the legatees had failed to prove that *but for* the scrivener's misrepresentations, the testatrix would not have bequeathed to him the stock.

In **Glover**, this Court purported to apply the teaching of **Paul** to address a claim of fraudulent inducement to make a will. **Glover** involved a will contest in which the contestants alleged the testatrix's will was invalid due to fraudulent inducement exercised by a friend.[5] It was established in the trial court that the friend, with the assistance of a financial advisor, had "unscrupulously misappropriated" $1.6 million dollars from the testatrix over the last few years of her life. In her will, which had been procured by the friend on testatrix's behalf from a law firm, testatrix left $50,000 each to the friend and the financial advisor. Family members challenged the will, which the trial court upheld. On appeal, this Court held that the friend had fraudulently induced testatrix to execute her will.

The Court began by noting that its "research has indicated that scant little case law exists in our Commonwealth regarding fraud in the inducement of executing a will." **Glover**, 669 A.2d at 1016. The Court identified **Paul** as the sole published opinion within the prior 80 years to address the issue of fraudulent inducement and cited the following language from that case: "[T]he court held that 'there is no evidence that testatrix did not know the

---

[5] Contestants also raised claims of forgery and undue influence, which were rejected by this Court.

true value of this stock and there is no evidence that . . . she would not have made this bequest had she known of its true value.'" *Glover*, 669 A.2d at 1016, quoting *Paul*, 180 A.2d at 262. From this, the *Glover* Court extrapolated that a claim of fraudulent inducement to make a will requires proof merely that: (1) the testatrix had no knowledge of the concealed or misstated fact, and (2) the testatrix would not have made the same bequest had she known the truth. *Glover*, 669 A.2d at 1016. Applying that test, the Court concluded that the testatrix was unaware of the misappropriation of funds by her friend, and that she would not have made the bequest had she known of the theft.

The Orphans' Court's reliance on *Glover* is problematic on multiple fronts. First, as noted above, *Paul*—upon which the *Glover* court based its holding—was a case ultimately involving undue influence, a similar yet distinct legal theory.[6] Thus, the *Paul* Court did not engage in a pure fraud analysis. For this reason, the *Paul* court's fact-specific distillation of the appellant's burden in that case is not directly applicable to a case rooted squarely in fraud.

---

[6] The *Glover* Court itself acknowledged this distinction, noting that:

> Theoretically, fraud is separate and distinct from undue influence, since, when the former is exercised the testator acts as a free agent but is deceived into acting by false data, and when the latter is exercised the mind of the testator is so overmastered that another will is substituted for his own.

*Glover*, 669 A.2d at 1016, quoting P.L.E. Wills § 114.

- 10 -

As such, the subsequent adoption by the **_Glover_** court of the factors enumerated in **_Paul_** as a definitive test for fraud was, in our opinion, in error.

Second, the **_Glover_** court misstated the **_Paul_** "test," omitting entirely **_Paul_**'s requirement that there be "fraud and misrepresentation" in the concealment of a material fact from the testator.[7] Thus, in relying on **_Glover_** rather than the Supreme Court's case from which it purported to glean its analytical framework, the Orphans' Court relied on an incomplete characterization of the law. Indeed, the **_Glover_** framework entirely omits the

_____

[7] **_Paul_** states that

> [a]ppellants' argument requires that four propositions be sustained: (a) that the true value of the stock was $800, not $50, per share; (b) that [appellee] knew this true value; (c) that, by fraud and misrepresentation, [appellee] concealed the true value from testatrix and lulled her into believing that, on the basis of a $50 per share value, she was bequeathing [appellee] less than 3% of her estate; [and] (d) that had testatrix known the true value of the . . . stock which represented approximately 33% of her gross estate she would not have made this bequest.

**_Paul_**, 180 A.2d at 261.

In purporting to adopt **_Paul_**'s factors as a test for fraud, the **_Glover_** court characterized the requirements as follows:

> **_Paul_** requires that, before a contestant can establish that the execution of a will was fraudulently induced, the contestant must prove that: (1) the testatrix had no knowledge of the concealed or misstated fact, and (2) the testatrix would not have made the same bequest had she known the truth.

**_Glover_**, 669 A.2d at 1016. The **_Glover_** court plainly omitted key elements of the **_Paul_** court's inquiry.

concepts of knowledge/recklessness, justifiable reliance and injury, all of which are key elements any fraud inquiry. **See Eigen**, **supra**. Accordingly, in relying on **Glover**, the Orphans' Court essentially failed to engage in a fraud analysis.

This matter is distinguishable from **Glover** and **Paul** for another reason. Unlike those cases, which addressed the fraudulent inducement of wills, this matter involves an irrevocable trust. Unlike a will, which is ambulatory and does not "speak" until the death of the testator, an irrevocable trust is just that—irrevocable—from the moment of its execution. While a will may be amended by codicil or revoked in its entirety, the transfer of property to an irrevocable trust is an immediate and final transfer of ownership. Because it is not easily modified or rescinded, an irrevocable trust provides stability and security for both the settlor and beneficiaries.[8] Assuming, *arguendo*, that **Paul** and/or **Glover** provide the proper framework for a fraud analysis in the context of wills, we conclude that, where an irrevocable trust is at issue, a stricter standard should apply. Thus, we hold that it is appropriate to apply, in the instant matter, the test for fraud as expressed in the case law concerning common-law fraud, as well as in the Restatement of Trusts and the Restatement of Property, which incorporate elements of knowing or reckless misrepresentation; intention to mislead another into reliance; and

---

[8] In this case, Margaret's purpose in executing the trust document was to ensure that the Passarelli family money stayed within the Passarelli family and would not be accessible to any future wife or children of Joseph. **See** N.T. Hearing, 6/23/16, at 51-52.

resulting injury caused by reliance. With this in mind, we turn to an application of those principles to the instant matter.

In Pennsylvania, the definition of fraud in the inducement is well-settled. A party must demonstrate:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

***Eigen v. Textron Lycoming Reciprocating Engine Div.***, 874 A.2d 1179, 1185 (Pa. Super. 2005).

In addition, the Uniform Law Comment to 20 Pa.C.S.A. § 7736, regarding setting aside a trust, notes that the section is a specific application of the Restatement (Second) and (Third) of Trusts, which provides that:

> a trust can be set aside or reformed on the same grounds as those which apply to a transfer of property not in trust, among which include undue influence, duress, and fraud, and mistake. This section addresses undue influence, duress, and fraud. For reformation of a trust on grounds of mistake, **see** Section 415. **See also** Restatement (Third) of Property: Wills and Other Donative Transfers Section 8.3 (Tentative Draft No. 3, approved 2001), which closely tracks the language above. Similar to a will, the invalidity of a trust on grounds of undue influence, duress, or fraud may be in whole or in part.

20 Pa.C.S.A. § 7736, comment.

As cited in the foregoing comment to section 7736, the Restatement (Third) of Property provides guidance regarding the definition of fraud as applied to a donative transfer:

(d) A donative transfer is procured by fraud if the wrongdoer knowingly or recklessly made a false representation to the donor about a material fact that was intended to and did lead the donor to make a donative transfer that the donor would not otherwise have made.

Restatement (Third) of Property (Wills & Don. Trans.) § 8.3 (2003).

As noted in **Eigen**, **supra**, there are six elements that must be proven in order to establish a claim of fraud in the inducement. Each of these elements must be present to warrant rescission of a Trust. **See Porreco v. Porreco**, 811 A.2d 566, 570–71 (Pa. 2002). First, a petitioner must demonstrate that there was a representation. Here, Margaret argues that this element is satisfied by Joseph's non-disclosure of Japen's ownership of the Properties. We disagree.

> To be actionable, a misrepresentation need not be in the form of a positive assertion but is any artifice by which a person is deceived to his disadvantage and may be by false or misleading allegations or by concealment of that which should have been disclosed, which deceives or is intended to deceive another to act upon it to his detriment. **Delahanty v. First Pennsylvania Bank, N.A.**, [] 464 A.2d 1243 ([Pa. Super.] 1983). Concealment can be a sufficient basis for finding that a party engaged in fraudulent conduct, provided that the other requisite elements of fraud are established. **Mancini v. Morrow**, [] 458 A.2d 580 ([Pa. Super.] 1983). While concealment may constitute fraud, however, *mere silence is not sufficient in the absence of a duty to speak*. **Smith v. Renaut**, [] 564 A.2d 188, 192 ([Pa. Super.] 1989).

**Wilson v. Donegal Mut. Ins. Co.**, 598 A.2d 1310, 1315–16 (Pa. Super. 1991) (emphasis added).

Here, Margaret has failed to demonstrate that Joseph, having disclosed Japen and its aggregate valuation, also had a duty to disclose each and every

asset owned by Japen. Margaret cites to nothing in the law of trusts—and our research has disclosed nothing—requiring that each and every asset composing the *res* of a trust be specifically identified by a settlor. While a trust is invalid unless the subject matter is definite or definitely ascertainable, trust property need not be segregated, designated or specifically described; a valid trust is created where the identity of the *res* is clear and the description sufficient. **DiLucia v. Clemens**, 541 A.2d 765, 767 (Pa. Super. 1988). "It is the identity of the fund, not of the pieces of coin or bank notes, that controls." **In re Vosburgh's Estate**, 123 A. 813, 815 (Pa. 1924).

Here, Japen and its total value were identified in Schedule "A" to the Trust. The description provided was sufficient to describe and identify the particular asset contributed to the Trust. **DiLucia**, **supra**. Indeed, it would be patently absurd to require that each and every asset of a corporate entity be identified upon the entity's contribution to a trust in order to constitute a valid transfer. A corporation is, itself, an identifiable asset and can be sufficiently described by its corporate name.

In light of the foregoing, we conclude that Joseph had no duty to disclose every individual asset owned by Japen and, as such, Margaret cannot prove the existence of a misrepresentation. **Wilson**, **supra**. Accordingly, the Orphans' Court erred in concluding that Margaret's execution of the Trust

agreement was the product of fraudulent inducement. ***Porreco***, ***supra*** (each element of fraud must be present to warrant rescission of trust).[9]

Decree reversed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/19

---

[9] Because we conclude that a finding of fraud in the inducement of a trust may not be premised upon a failure to identify each and every asset contributed to a trust, and reverse on that basis, we need not consider the remaining issues Joseph raises in his statement of questions involved.