J-A04027-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARGARET G. PASSARELLI, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH A. PASSARELLI, | : | |
| | : | |
| Appellant | : | No. 2189 EDA 2019 |

Appeal from the Order Entered July 5, 2019
in the Court of Common Pleas of Chester County
Civil Division at No(s): 2015-09006-DI

BEFORE:    PANELLA, P.J., STRASSBURGER, J.* and COLINS, J.*

MEMORANDUM BY STRASSBURGER, J.:                    **FILED MAY 11, 2020**

Joseph A. Passarelli (Husband) appeals from the July 5, 2019 order granting Margaret A. Passarelli's (Wife) petition for Husband to reimburse the marital estate, in the amount of $203,455.46, in order to preserve the status quo of marital assets during the pendency of Husband and Wife's divorce action following Husband's termination of two 529 accounts.[1]  Upon review, we quash.

Wife instituted the instant case when she filed for divorce in September 2015.  A final divorce decree has not been entered.  Husband and Wife were married on November 27, 1998.  In the spring of 2015,

---

[1] A 529 account is a "qualified tuition plan[] established pursuant to 26 U.S.C. § 529[.]"  **Brooks v. Brooks**, ___ A.3d ___, 2020 WL 1242437 at *1 (Pa. Super. 2020).  In the instant case, the 529 accounts were "Schwab 529 Education Savings Plan" accounts.  Order, 7/5/2019, at 1 n.1.

---

*Retired Senior Judge assigned to the Superior Court.

Husband and Wife created an irrevocable *inter vivos* trust (the Trust). Shortly after creation of the Trust, Wife learned of Husband's extramarital affair. Wife initiated divorce proceedings and in October 2015, filed a petition for special relief to prevent dissipation of marital assets from the Trust. By order of December 4, 2015, the family court granted in part Wife's petition and froze 50 percent of certain accounts in the Trust.

On January 19, 2016, Wife filed a petition to terminate the Trust in orphans' court based upon allegations of fraud, undue influence, and duress. Following an evidentiary hearing, the orphans' court dissolved the Trust based upon a finding of fraudulent conduct by Husband. On appeal to this Court, a three-judge panel reversed the orphans' court order. On reargument *en banc*, this Court again reversed, concluding that the orphans' court erred in finding Wife's execution of the Trust to be the product of fraudulent inducement. **See In re Passarelli Family Trust**, 206 A.3d 1188, 1196 (Pa. Super. 2019) (*en banc*). Our Supreme Court has granted Wife's petition for allowance of appeal, and that matter remains pending as of this writing. **Id.**, *appeal granted*, 217 A.3d 890 (Pa. 2019).

This appeal by Husband stems from a July 5, 2019 order from the family court. That order required Husband to reimburse the marital estate as a result of Husband's closure of two 529 accounts. By way of background, around December 31, 2010, Husband opened a 529 account for Husband and Wife's minor son in the amount of $55,000, and a 529 account

for their minor daughter in the amount of $55,000 (collectively, Children). The 529 accounts were not transferred into the Trust, "presumably because Husband considered them at that time to be for the educational benefit of [C]hildren, therefore differentiating them from the $14 million in other marital assets conveyed into the [T]rust." Order, 7/5/2019, at 1 n.1.

> The purpose for establishing the accounts, formally known as a "Schwab 529 Education Savings Plan," was to provide a tax-advantaged mechanism for the future educational expenses of [C]hildren. By July 5, 2018, when Husband liquidated both accounts, their values had grown to $93,655.51 and $109,799.85, respectively, as evidenced by Exhibit W-11. It is not disputed that the initial $110,000 invested in December, 2010, was derived from marital assets.
>
> ***
>
> Given the manner in which 529 [p]lans are structured under federal tax law, while [Children] were designated as beneficiaries of the accounts, [Husband] was still considered to be the "Primary Account Owner." As a "Beneficiary," neither child possessed any legal ownership interest in the funds, and as "Account Owner," Husband had the legal authority to close the accounts. In this case, he did so on July 5, 2018, without any advance notification to either Wife or [C]hildren. However, as reflected in Exhibit W-4, Husband promptly notified [C]hildren of his liquidation of the accounts, stating, in part, "I no longer have the funds to defend Mom's legal action and I have been forced to reclaim the funds that I originally used to set up 529 plans for the both of you." Of course, Husband's liquidation of the accounts carried a significant federal income tax consequence that would not have occurred had the funds been utilized for qualified higher education expenses.

*Id.*

On July 30, 2018, Wife filed a petition for special relief in the family court to prevent the dissipation of marital assets, pursuant to 23 Pa.C.S.

§ 3323(f) (concerning equity power of divorce court). Therein, she requested that Husband be directed to reimburse the marital estate for the value of the two 529 accounts that he terminated. Husband filed an answer and counterclaim for special relief. Wife responded with a motion to strike. Following several continuances, the family court held an evidentiary hearing on February 19, 2019. Both Husband and Wife submitted written closing arguments, and Wife moved to reopen and supplement the record with several exhibits. The family court granted that request.

On July 5, 2019, the family court issued an order granting Wife's petition for special relief. The order required Husband to reimburse the marital estate in the amount of the closed 529 accounts to preserve the status quo of the marital assets during the pendency of their divorce action. In order to accomplish this, the family court ordered Wife to open a separate account specifically for Children's future college educational needs. The family court then permitted the limited unfreezing of the Trust to permit Husband to transfer funds from the Trust into the newly-created account for Children, while noting that its December 4, 2015 order, among others, otherwise remained "in full force and effect[.]" Order, 7/5/2019, at 2.

This timely-filed appeal followed.[2] On August 13, 2019, this Court issued a rule to show cause as to why the appeal should not be quashed because the order appealed from was not "final or otherwise appealable." Order, 8/13/2019. Husband filed a response, arguing that the July 5, 2019 order was appealable as a collateral order as of right. *See* Husband's Response to Rule to Show Cause, 8/15/2019, at 3. This Court discharged the rule to show cause and deferred the matter to the merits panel. Order, 8/20/2019.

On appeal, Husband raises two questions for this Court to review:

1. Whether the family court division of the court of common pleas has jurisdiction to overrule an order of the orphans' court division related to management of the assets of an irrevocable trust.[3]

---

[2] The family court ordered Husband to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). In his statement, Husband did not challenge the substance of the July 5, 2019 order, but rather recited the procedural history of the case. The family court was unable to ascertain what errors Husband intended to raise on appeal, and so it issued a Rule 1925(a) opinion directing us to its July 5, 2019 order.

[3] We note that the orphans' court has mandatory and exclusive jurisdiction over, *inter alia*, the "administration and distribution of the real and personal property of *inter vivos* trusts[.]" 20 Pa.C.S. § 711(3). *See Green v. Green*, 783 A.2d 788, 793 (Pa. Super. 2001) ("Under Pennsylvania law, the exclusive jurisdiction over an *inter vivos* trust… is in the orphans' court of the county in which the trust is located."). However, because we do not reach the merits of Husband's claims for the reasons stated *infra*, we need not determine whether the family court's July 5, 2019 order implicated the "administration and distribution" of the Trust, such that it infringed on the orphans' court's mandatory and exclusive jurisdiction over the Trust.

2.   Whether a judge presiding over a matter should be removed from a case where he refers to the defense of the case as "shenanigans" before the defendant has presented any evidence and where he instructs counsel in the case to continue a line of inquiry because it is "getting under the skin" of a party/witness.

Husband's Brief at 7 (unnecessary capitalization and family court answers omitted).

Before we address the questions Husband raises on appeal, we first must determine whether the order appealed from is appealable, as appealability implicates our jurisdiction.

> "Jurisdiction is purely a question of law; the appellate standard of review is *de novo* and the scope of review plenary." ***Barak v. Karolizki***, 196 A.3d 208, 215 (Pa. Super. 2018) (citation omitted).

> In order to be appealable, the order must be: (1) a final order, Pa.R.A.P. 341-42; (2) an interlocutory order appealable by right or permission, 42 Pa.C.S. § 702(a)-(b); Pa.R.A.P. 311-12; or (3) a collateral order, Pa.R.A.P. 313.

***Interest of J.M.***, 219 A.3d 645, 650 (Pa. Super. 2019).

In the instant case, Husband states in his brief on appeal that the order appealed from is a final order, and that this Court has jurisdiction pursuant to Pa.R.A.P. 341 (relating to final orders). Husband's Brief at 1. This Court has held consistently that "where a decree in divorce has not been entered and ancillary claims remain unresolved, issues such as those seeking special relief, are interlocutory and unappealable." ***Moser v. Renninger***, 40 A.3d 156, 157 (Pa. Super. 2012) (citation and quotation marks omitted). ***See also Griffin v. Griffin***, 558 A.2d 86, 90 (Pa. 1989)

- 6 -

("This Court has held that an order granting special relief under the Divorce Code is not a final and appealable order[.]").  A final divorce decree has not been entered in this case, and the equitable distribution issues remain outstanding.  Thus, the order appealed from is not a final order for purposes of appeal.

Husband has not alleged that this is an appeal from an interlocutory order appealable by right or permission.  In Husband's response to this Court's rule to show cause, and again at oral argument, he invoked the collateral order doctrine.  We consider this mindful of the following.

This Court has held that a non-final order in a divorce proceeding

> may be appealable under the collateral order doctrine. ***See Radakovich v. Radakovich***, 846 A.2d 709, 714-15 (Pa. Super. 2004) (holding that an order entered in a non-final divorce action that awarded the parties' son an interest in a brokerage account was appealable as a collateral order). A collateral order is defined as follows in the Rules of Appellate Procedure:

>> A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

> Pa.R.A.P. 313(b).

***Kulp v. Kulp***, 920 A.2d 867, 869-70 (Pa. Super. 2007).  Our Supreme Court has clarified our scope of review.

> [We] construe the collateral order doctrine narrowly, and insist that each one of its three prongs be "clearly present" before collateral appellate review is allowed. Indeed, [w]e construe the collateral order doctrine narrowly so as to avoid undue corrosion

- 7 -

of the final order rule, ... and to prevent delay resulting from piecemeal review of trial court decisions. As colorfully explained by then-Justice, later Chief Justice, Henry X. O'Brien, "[i]t is more important to prevent the chaos inherent in bifurcated, trifurcated, and multifurcated appeals than it is to correct each mistake of a trial court the moment it occurs." ***Calabrese v. Collier Township Municipal Authority***, [] 248 A.2d 236, 238 ([Pa.] 1968) (O'Brien, J., dissenting).

***Shearer v. Hafer***, 177 A.3d 850, 858 (Pa. 2018) (some citations and quotation marks omitted).

With this background in mind, we turn to application of the three-pronged test to the instant case.

> As noted above, the collateral order doctrine permits an appeal as of right from a non-final collateral order if the order satisfies the three requirements set forth in Rule 313(b)—separability, importance, and irreparability.
>
> With regard to the first prong of the collateral order doctrine, an order is separable from the main cause of action if it can be resolved without an analysis of the merits of the underlying dispute and if it is entirely distinct from the underlying issue in the case.
>
> ***
>
> Turning to the second prong of the collateral order doctrine, the importance prong, a right is important if the interests that would go unprotected without immediate appeal are significant relative to the efficiency interests served by the final order rule. Further, the rights involved must implicate interests deeply rooted in public policy [and] going beyond the particular litigation at hand.

***Shearer***, 177 A.3d at 858-59 (citations and quotation marks omitted). "The third prong requires us to examine whether the claim would be irrevocably lost if review were postponed until final judgment." ***Spanier v. Freeh***, 95 A.3d 342, 346 (Pa. Super. 2014) (emphasis omitted).

- 8 -

As noted hereinabove, Husband alleged in his response to this Court's rule to show cause that the instant appeal from the July 5, 2019 order was permissible pursuant to the collateral order doctrine. Instead of expounding on how the order appealed from satisfies the above three-pronged test, however, Husband merely recited Rule 313's definition of a collateral order and stated that there "is precedent for consideration of appeals in divorce matters where the court [o]rder affects ownership and management of property, which does not or may not belong to the divorce litigants." Husband's Response to Rule to Show Cause, 8/15/2019, at 3-4. In support thereof, Husband cited **Griffin**, 558 A.2d 75, **Radakovich**, 846 A.2d 709, and **Nemirovsky v. Nemirovsky**, 776 A.2d 988 (Pa. Super. 2001).

**Griffin** involved a support order, whereas the instant case involves an attempt to maintain the status quo of marital assets. Thus, we find the instant case distinguishable. **Radakovich** and **Nemirovsky** involved interveners asserting property rights over accounts related to the underlying divorce action. In finding the orders appealed from collateral, this Court noted that property rights are deeply rooted in public policy, and that the orders regarding the interveners were separate and collateral to the underlying divorce action. **See Nemirovsky**, 776 A.2d at 991; **Radakovich**, 846 A.2d at 714. As to irreparability, this Court held in **Nemirovsky** that "any rights the appellants may have to the property will be irreparably lost if review is postponed until final judgment in the

underlying divorce action because the property will be sold to satisfy the National Penn Bank loan."  776 A.2d at 991 (citation omitted).  ***See also Radakovich***, 846 A.2d at 714-15 ("[A]ny rights [appellant] may have as to the account will be irreparably lost if review is postponed until a final divorce decree is entered since [s]on could dissipate the funds in their entirety.").

In the instant case, there is no danger of the Trust being dissipated as it has already been frozen by the family court.  Contrarily, Husband dissipated an account that had been funded with marital assets and had not been frozen – the 529 accounts.  It was this action that prompted the appealed-from order.  The July 5, 2019 order attempts to maintain the status quo of the parties' marital assets pending the underlying divorce action, despite Husband's efforts to the contrary.  In this case, no right will be lost irreparably by postponing the matter of the Trust until the end of the underlying divorce action when equitable distribution is determined, or after our Supreme Court rules on the validity of the Trust.  Accordingly, there is no danger of irreparable loss, and the collateral review doctrine does not apply here.

Thus, the order appealed from is not appealable, and we are without jurisdiction to review the merits of Husband's claims.  Accordingly, we quash this appeal.

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/20