### Harding, Appellant, v. Harding.

Argued November 30, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Simon Pearl,* with him *A. Albert Feldman* and *Henry Arronson,* for appellant.

*R. Sturgis Ingersoll,* with him *T. Burns Drum,* for appellee.

PER CURIAM, January 5, 1932:

Plaintiff in her bill asked that a deed of trust she made to her brother be set aside. The court below entered a decree refusing the relief prayed for by plaintiff and permitted defendant to charge designated items of expense against the trust estate, from which decree plaintiff appeals.

The deed in question, signed under date of July 14, 1916, irrevocably conveyed to appellee, in trust, practically the entire property of which appellant was then possessed and other specified property to which she was entitled and would later come into possession, the income under the trust to be paid to her during her lifetime, and at her death the principal to be paid to her issue, if any, and if not, then to her brother, his heirs or assigns; or, should her brother not survive the grantor, then provision was made for a substitute trustee and for the principal to go, at her death, to grantor's heirs under the intestate laws.

Appellant avers that she signed the deed without reading it and was unaware of its contents until thirteen years later when this proceeding was instituted; that it was obtained by abuse of confidence, and made without consideration to her.

After hearing testimony, the chancellor found (and his findings, being supported by ample testimony, will not be disturbed by this court: Foley v. Barnett, 303 Pa. 218), the deed had been prepared "After much discussion by complainant with her mother, friends, and her brother, the respondent"; that "There is no evidence in the record, nor is it possible to draw any inference from the record, that the respondent used undue influence, coercion, or any pressure of any kind whatsoever upon the complainant to execute the said deed of trust," and "During the period from the date of the execution of said deed of trust, to wit, from July 14, 1916, until the latter part of the year 1928, the respondent performed his duties as trustee, with full knowledge of the complainant and without any question or objection, either to the actual execution of the deed of trust or the administration by the respondent of the trust"; and further: "The testimony as to [complainant's] knowledge of the document and its effect is this: First, the paper itself and her signature, which she does not dispute. The notary's statement that she personally acknowledge it, having had it in her possession; a recital of it in a second document, signed by the complainant. In addition, two of her mother's intimates,...... who are entirely disinterested witnesses, testify to conversations with complainant which leave no doubt, if they are truthfully reported, that complainant knew that her property was in the hands of her brother as trustee, and knew the terms of the trust. And finally complainant acknowledges that she received fifty-three checks from her brother, each signed by him as 'Trustee for Elizabeth Jane Harding.' Against this there is nothing offered but the bare oath of the complainant

to her ignorance of the trust, the denial of her signature to the second document referred to and her statement that she did 'not notice' the signature to the checks." To the above the chancellor, who heard and saw the witness, added that he could "put no reliance upon anything she says"; and that she was "a very independent young woman, . . . . . . by no means the kind of a person who could be easily persuaded to do what she did not want to do." The trial judge further states: "There is no explanation of the tardiness of plaintiff's attack upon the deed, except the false one, which was that she did not know a trust existed." "With regard to her motives for creating the trust: Plaintiff was much impressed by the fact that the share of one of the heirs of her grandfather's estate had passed out of the family by the death of the heir, and the consequent inheritance by her husband. She resented the idea that Harding property should go out of the family. The effect of the deed was to carry out this idea. Again, the benefit the respondent took under it was, when it was executed, remote. Under its terms the plaintiff retained a life interest for herself, remainder for her issue, and failing that, remainder to the respondent, or his children, the plaintiff's nephews and nieces. In other words, the property goes under the deed substantially as it would under the intestate laws. The prospects of the respondent benefiting under this deed were not great. He was older than plaintiff. The probabilities were she would survive him. . . . . . . Possibility of issue in her own line was strong [plaintiff at the time having just come of age]. Failing this, and failing the respondent, plaintiff's nephews and nieces took." "We are of opinion that the respondent in this case has accepted the burden . . . . . . upon [him] to show that the grantor knew the effect of . . . . . . her act and executed the instrument of . . . . . . her own free will. . . . . . . We are satisfied that the complainant accomplished by the deed exactly what she then wanted, and that she was

not led by the respondent to create the trust, but wished it for her own purposes, which it expresses."

Upon the above excerpts from the findings, discussion, and opinion sur exceptions to the findings, we affirm the conclusions of President Judge FINLETTER, acting as chancellor in the court below, that "the deed of trust in this case is a valid and binding one and under its terms irrevocable"; that, no objection having been made at the trial by complainant to the administration of the trust, she is presumed to have approved the same, and likewise the account and supplemental account filed by respondent. While the chancellor made no finding to the effect, it appears in the evidence that the trustee neither asked nor received compensation for his services in executing the trust in behalf of his sister under the deed in question, accordingly we see no valid reason why the trustee, as stated in the third clause of the decree, should not be "permitted to charge against the income of the trust estate the expense incurred in the employment of an expert witness [in connection with the disputed authenticity of written evidence], and a reasonable counsel fee," both services being necessary.

The decree of the court below is affirmed at appellant's costs.