677 A.2d 331

**Michael A. REBIDAS a/k/a Michael Rebidas**

v.

**Joseph J. MURASKO and Ludmilla Madison.**

**Appeal of Joseph M. MURASKO.**

Superior Court of Pennsylvania.

Argued Feb. 28, 1996.

Filed May 24, 1996.

548

Nicholas J. Cook, Uniontown, for appellant.

Ricardo J. Cicconi, Uniontown, for appellee.

Before CIRILLO, President Judge Emeritus, and SAYLOR and EAKIN, JJ.

CIRILLO, President Judge Emeritus:

Appellant Joseph M. Murasko, co-trustee of the trust at issue, appeals from an order of the Court of Common Pleas of Fayette County granting Michael A. Rebidas' petition to terminate an irrevocable trust. We affirm.

Michael Rebidas, the settlor of the irrevocable trust agreement at issue, is a seventy-one year old bachelor who resides on a farm in Smock, Fayette County, Pennsylvania. Since 1942, Rebidas lived on the farm with his brother, George. Rebidas never married, nor did George. Rebidas has an eighth grade education.

The brothers owned property jointly. Upon George's death in June of 1990, all title to the property passed to Michael Rebidas by operation of law.

On November 13, 1991, Murasko, Rebidas' brother-in-law, who is also a licensed attorney in Florida, suggested that Rebidas sign a trust agreement naming him (Murasko) and Ludmilla Madison, one of Rebidas' sisters, as co-trustees. The corpus of the trust consisted of several certificates of deposit, valued at approximately $130,000.00, and 210 acres of real property. The trust agreement provided that Rebidas receive the net income of the trust, and the co-trustees manage and invest the corpus. Rebidas' remaining brother and his sisters were named as beneficiaries of the trust.

In 1994, Michael Rebidas expressed dissatisfaction with the trust, apparently realizing that the co-trustees had significant

control over his real estate, personal estate, and bank accounts. Through counsel, Rebidas attempted to amicably resolve the matter, requesting the co-trustees to agree to rescind the trust agreement. Murasko refused this request.[1]

Rebidas filed a petition to terminate the trust, seeking rescission based upon mistake. Rebidas contended that he was presented with the trust agreement at a time when he was still emotionally distraught over his brother's death, a brother with whom he had lived for almost fifty years. Rebidas also averred that he never intended to relinquish control over the bulk of his assets.

The trial court granted Rebidas' request, finding that the irrevocable intervivos trust was executed at the request and direction of Murasko, that it "effectively stripped [Rebidas] of all title to, and control of, his real and personal estate[,]" and that Rebidas did not knowingly and voluntarily execute the agreement. Co-trustee Murasko filed a motion for reconsideration. The trial court denied this motion. On appeal, Murasko raises one issue for our review:

Did the settlor prove by clear, precise, convincing and satisfactory evidence that the settlor signed the irrevocable trust agreement by mistake?

A trust is a fiduciary relationship; one person holds a property interest subject to an equitable obligation to hold or use that interest for the benefit of another. *Valley Forge Historical Society v. Washington Memorial Chapel*, 330 Pa.Super. 494, 479 A.2d 1011 (1984). The language or conduct creating the trust must be clear and unambiguous. A statement will be sufficient evidence of a trust if the beneficiary, the trust property, and the purpose of the trust are set forth therein. *First Federal Sav. & Loan Assoc. v. Great Northern Development Corp.*, 282 Pa.Super. 337, 422 A.2d 1145 (1980).

Generally, a trust executed without reservation of power by a settlor to revoke or reform the trust is irrevocable. *See Harding v. Harding*, 305 Pa. 572, 158 A. 253 (1932). An

1. Ludmilla Madison, Rebidas' sister and co-trustee, testified that she did nothing with respect to the trust other than sign the instrument.

irrevocable trust may be rescinded by the settlor, however, if it is demonstrated that the trust was created through fraud, duress, undue influence, or mistake. *Id.*

Here, the agreement specifically provides that the trust is irrevocable. Item V of the trust agreement states:

a. The trust created by this instrument shall be irrevocable. The settlor does not reserve unto himself the power to alter, amend, or revoke any provisions of this trust.

The trial court determined, however, based on the totality of the circumstances presented to it, that Rebidas did not knowingly, intelligently or voluntarily sign the trust agreement. The trial court found that Murasko, an attorney with a Florida law practice specializing in probate and estate work, initiated the trust agreement.[2] Murasko acknowledged this on cross-examination. Rebidas never requested assistance in his financial affairs. In fact, Murasko acknowledged on cross-examination that he explained to Rebidas what he wanted, and that Rebidas "acquiesced." Murasko also acknowledged that Rebidas only signed the instrument at his request, and that he never sent Rebidas any documents or statements pertaining to the trust assets or their values until he received letters from Rebidas' attorney, three years after the trust agreement was signed.

The trial court determined that Rebidas did not understand the nature of the instrument. Furthermore, the trial court found that Murasko never suggested that Rebidas retain

---

**2.** We note that Rebidas testified at the hearing that when Murasko presented the papers to him for signature, Rebidas believed that they pertained to his deceased brother's estate. Rebidas testified:

A: ... Like I said, I just put my trust in him, and he put those papers out there, and he said for me to sign these.
Q: Well, by putting your trust in him, did you believe that it was something to do with your estate?
A: At the time, no. I thought that it was my brother George's.
Q: So, you thought that the documents that you were signing had to do with your brother George's estate?
A: Yes.

＊　　＊　　＊　　＊　　＊　　＊

Q: Could you read them when you were signing them?
A: No., I couldn't read them.... He had his hand over the top of the paper.

independent counsel to review the document before signing it; the document was prepared on Murasko's computer and signed and notarized immediately thereafter. The trial court stated:

It is clear from Rebidas' testimony that he trusted Murasko and believed that Murasko was acting in his best interest. However, this in reality was a false belief as Rebidas did not fully comprehend the trust agreement itself, or its ramifications. Murasko, as a practicing attorney possessing the superior knowledge concerning inter-vivos trust agreements, did nothing more to explain the terms than to review them in a summary fashion after it was he, (Murasko), who strongly suggested the irrevocable trust be created. This Court believes that if Murasko had truly benevolent motives and wanted sincerely to act in Rebidas' best interest he, at a minimum, would have suggested Rebidas seek independent legal advice, or allow Rebidas a few days to consider it.

The trial court invoked its equitable powers and rescinded the trust agreement.

The evidence required to substantiate a request for rescission must be clear, precise, and convincing. *In re Trust Estate of LaRocca*, 411 Pa. 633, 192 A.2d 409 (1963). The credibility and weight accorded to the testimony and witnesses will not be disturbed except for clear error. *See Harbison Estate*, 365 Pa. 468, 76 A.2d 187 (1950); *see also LaRocca*, *supra*.

This court recently reiterated that "a confidential relationship is any relationship existing between the parties to a transaction wherein one of the parties is bound to act with the utmost good faith for the benefit of the other party and can take no advantage to himself from his acts relating to the interest of the other party." *Biddle v. Johnsonbaugh*, 444 Pa.Super. 450, 455, 664 A.2d 159, 161–62, (1995) (citations omitted). This confidential relationship is not limited to any particular association of the parties, but exists whenever one is in a position of advisor or counselor, whereby the other party, with reasonable confidence, trusts that person to act in good

faith for the other's interest. *Id.* There must be an overwhelming influence on the one side, and a showing of weakness, dependence or trust on the other. *Id.* The existence of a confidential relationship, in all but a few instances which are not applicable here, is a question of fact to be established by the evidence. *Id.*

The mere existence of kinship, or a family tie, does not establish a confidential relationship, but is merely one factor to be considered in the determination. *Id.* Once a confidential relationship is found to exist, the proponent of a contract must show by clear and convincing evidence that "the contract was free, voluntary and an independent act of the other party, entered into with an understanding and knowledge of its nature, terms and consequences." *Id.* (quoting *Kees v. Green,* 365 Pa. 368, 375, 75 A.2d 602, 605 (1950)). "The general test for determining a [close and confidential] relationship is whether the parties did not deal on equal terms." *Frowen v. Blank,* 493 Pa. 137, 145, 425 A.2d 412, 416 (1981).

Our exhaustive review of the record indicates that a confidential relationship clearly existed between Murasko and Rebidas. Murasko, acting as an attorney and trustee, was bound to act in good faith. Having practiced law for 38 years, specializing in probate and estate work, Murasko clearly possessed superior knowledge of the subject matter. In addition to comparative knowledge and education, Murasko's overwhelming influence and Rebidas' trust in Murasko, as well as his dependency and weakness, was evident. *Biddle, supra.*

The existence of a confidential relationship, however, is not of itself grounds for rescission. That relationship, once found, indicates only a "voidable" transaction. *Biddle,* 444 Pa.Super. at 456, 664 A.2d at 162. The party seeking to sustain the validity of the agreement must affirmatively demonstrate that the agreement was "fair, conscientious and beyond the reach of suspicion." *Id., quoting Leedom v. Palmer,* 274 Pa. 22, 25, 117 A. 410, 411 (1922). Specifically, the proponent must establish that the agreement was a "free,

voluntary and . . . independent act of the other party, entered into with an understanding and knowledge of its nature, terms and consequences." *Kees v. Green,* 365 Pa. 368, 375, 75 A.2d 602, 605 (1950).

■ This court is convinced that, at the time of the execution of the agreement, Rebidas did not comprehend the nature of the trust instrument and did not understand that he was relinquishing control of his assets. We believe that Rebidas was completely unlettered with regard to the terms and consequences of the trust. Rebidas possessed minimal education and little or no business instruction. He acknowledged that his brother, George, had handled the finances. Rebidas was unsophisticated in this domain and, as he testified, was "easy" with people. We glean from our review of the testimony that when his brother died, Rebidas, understandably, was overwhelmed; he acquiesced to those he perceived as more knowledgeable, and relinquished to them those matters he did not understand. Rebidas did not know any better; Murasko did.[3]

We find, contrary to the requirements of *Kees, supra,* that the record is devoid of any evidence which would support a finding that Rebidas understood the nature, terms and consequences of the trust agreement. The trial court appropriately stemmed the relationship granting Rebidas' request for rescission of the irrevocable trust. *Estate of Pedrick, supra.*

Order affirmed.

---

**3.** Recognizing that the Code of Professional Conduct does not have the force of substantive law, we note that Murasko's own testimony reveals that his conduct may have fallen below the standards required of an attorney. Having practiced law for 38 years, Murasko should have understood the significance of fully informing his client of his legal rights, of maintaining communication with his client, and of avoiding potential conflicts. *See In re Estate of Pedrick,* 505 Pa. 530, 482 A.2d 215 (1984).