J-A19014-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTOPHER MARTIN, INDIVIDUALLY AND AS TRUSTEE OF THE DANIEL R. PAUL AND SUSAN L. PAUL IRREVOCABLE ASSET PROTECTION APT TRUST DATED 12/14/2011 | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| SUSAN L. PAUL, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DANIEL R. PAUL | : : : : | |
| Appellant | : : | |
| CORY W. MARTIN, INDIVIDUALLY AND AS PURPORTED TRUSTEE OF THE DANIEL R. PAUL AND SUSAN L. PAUL IRREVOCABLE ASSET PROTECTION APT TRUST DATED 12/14/2011 | : : : : : : | No. 118 MDA 2018 |

Appeal from the Order Entered January 2, 2018
In the Court of Common Pleas of Columbia County
Orphans' Court at No(s):  2016-OC-142

BEFORE:  GANTMAN, P.J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED APRIL 03, 2019**

Appellant, Susan L. Paul, individually and as personal representative of

the Estate of Daniel R. Paul, appeals from the order entered in the Columbia

County Court of Common Pleas Orphans' Court, which granted partial relief in

favor of Appellee, Christopher [A.] Martin, individually and as trustee of the

Daniel R. Paul and Susan L. Paul Irrevocable Asset Protection Trust ("APT")

dated 12/14/2011.  To the extent the order purports to award immediate and

direct ownership of the Atta Farm property to Appellee Christopher A. Martin, we vacate and remand the order for clarification or correction. We quash the appeal as to Appellant's issues two and three, and remand the case for further proceedings.

The relevant facts and procedural history of this case are as follows. Appellant is the mother of Appellee Christopher A. Martin and his brother, Cory W. Martin. In 1985, Appellant married Daniel R. Paul. With the help of Mr. Paul, Appellee Christopher A. Martin formed Christopher A. Martin Wildlife Management, Inc. ("Company") in 2005. Appellant and Mr. Paul purchased real property, on June 3, 2009, located on Atta Road in Stillwater, Pennsylvania ("Atta Farm"). On July 1, 2009, Appellant and Mr. Paul entered into a five-year commercial lease contract with Appellee Christopher A. Martin, individually and on behalf of the Company, to allow the Company to conduct horse boarding and related business at the Atta Farm property. That same day, the Company began operating a horse boarding service at Atta Farm.

On December 14, 2011, Appellant and Mr. Paul executed a revocable living trust agreement, the Daniel R. and Susan L. Paul Family Trust ("Family Trust"). The Family Trust named Appellant and Mr. Paul as settlors and trustees of the Family Trust. The Family Trust contained several sub-trusts, including a Survivor's Trust and the APT.

The Family Trust provided, in relevant part, as follows:

**REVOCABLE LIVING TRUST**
*Declarations & Agreement*

- 2 -

## ~ RECITALS ~

This Revocable Declaration of Trust and Agreement, referred to as the

### DANIEL R. & SUSAN L. PAUL FAMILY TRUST
### Dated: December 14, 2011

is hereby made and entered into…between

### DANIEL R. PAUL & SUSAN L. PAUL
(a married couple)

…hereinafter referred to as the "Settlors"….

It is the primary purpose and intent of this Trust to provide for the management of the Settlors' assets both presently and during any future period of disability. This Trust Agreement is a chosen alternative preferred to guardianship or formal conservatorship proceedings that are conducted in and supervised by a court of law. This Trust Agreement shall serve as a simplified means of accomplishing both lifetime and death transfers of both Settlors' assets.

\*   \*   \*

### ARTICLE TWO
### - Reservation of Rights –

2.1. The Settlors reserve the following rights, individually as to their respective interest in Tenants-in-Common property and as to their respective Sole and Separate property, to be exercised at any time and from time to time by a written instrument effective immediately upon its execution **during their joint lives** without consent or participation of any other person:

(a) Settlors may amend this Trust, in whole or in part, or to revoke this Trust agreement in its entirety (by a writing delivered to a Trustee other than themselves if such Trustee is serving) and to remove any or all of their respective interests in their respective property transferred to this Trust.

\* \* \*

2.3. **Upon the death of either Settlor**, this Trust shall be irrevocable and non-amendable subject, however, to any power of appointment, right of withdrawal or right of revocation hereinafter granted to the Survivor **concerning property held in the Survivor's Trust** as provided in Article Five.

\* \* \*

## ARTICLE FIVE
*- Administration/Distribution of Survivor's Trust –*

5.1. The Survivor shall retain full (and unhindered) general power of appointment of **all property held in the Survivor's Trust**, including the power to alter, amend or revoke, in whole or in part, any and all provisions (including the revocation and appointment of any Trustee of the Survivor's Trust) concerning such property held in the Survivor's Trust.

\* \* \*

*The following Article (Eight) provides for the allocation, administration and distribution of the Trust Estate upon the decease of the surviving Settlor.*

## ARTICLE EIGHT
*- Estate Distribution Upon Death of Survivor –*

\* \* \*

8.1. If any of the following named beneficiaries referenced below—who are receiving separate allocation(s) of Settlors' (respective) properties—do not survive the last Settlor to die, then such allocation(s) shall be distributed as per the *remainder* Trust Estate below Section 8.2.

\* \* \*

(e) **CHRISTOPHER A. MARTIN**, Wife/Settlor's son, shall receive all interest in Wife/Settlor's property

located at *34 Atta Road/Stillwater, Pennsylvania 17878.*

8.2. **CHRISTOPHER A. MARTIN & CORY W. MARTIN**, Wife/Settlor's sons, shall <u>each</u> receive **equal (1/2) portions** of the *remainder*—remaining after all of the above allocations (if any) of the Trust Estate.

\*   \*   \*

## ARTICLE NINE
### *- Successor Trustee Appointments –*

9.1.   The Settlors reserve the power to remove any Trustee during their **joint lives** and to appoint other or additional Trustees not presently named as Successor Trustee at the creation of this Trust.

\*   \*   \*

(*Following is the designation of the Successor Trustee*)

9.4.   Upon the (i) resignation or (ii) inability to serve because of a medical/mental condition causing impairment of normal administrative abilities (as evidenced by a medical certificate from his or her attending physician) or (iii) death of the surviving Settlor/Trustee then **CHRISTOPHER MARTIN** (Wife's Son) shall serve as Trustee of this Trust.

\*   \*   \*

## ARTICLE SEVENTEEN
### *- Asset Protection Trust –*

17.1. BE IT KNOWN that the Settlors affirm their right of transfer and assignment of portions or all of their property of the (preceding) Revocable Trust Estate to another individual(s) whether by a lifetime gift or by a transfer at death, outright, or IN TRUST.  *To that end, it is the Settlors' intent with the funding of the following prescribed irrevocable sub-trust (of the Revocable Living Trust Estate) to preserve the principal assigned therein by vesting the same to the intended remainderman beneficiaries of this irrevocable, sub-trust component (of Settlors' Revocable Living Trust Estate) hereinafter referred to and identified as*

- 5 -

the **Asset Protection Trust (APT)**. *The primary purpose and intent of the* **APT** *is to reasonably avoid preventable governmental "spend-downs" of Settlors' estate otherwise charged for services the Settlors may qualify to receive through state-and-federal-partnered Medicaid entitlement program(s) as defined under Title XIX of the Social Security Act/42 U.S.C. § 1396 et seq.*

17.2. Settlors hereby acknowledge and exercise the right to allocate, assign, and transfer any potion or all of the principal amount of the Revocable Living Trust Estate *deemed under the revocable, general power of appointment control of the Settlors* whether in cash or in kind—or directly from the Settlors outside the Trust (and/or directly from other individuals) to this Irrevocable Asset Protection Trust (APT) (subtrust) portion described hereunder, subject to the terms of this Article. All such irrevocable transfers assigned hereto shall be deemed a part of this APT also referred to as the—

## DANIEL R. PAUL & SUSAN L. PAUL
## IRREVOCABLE ASSET PROTECTION TRUST
### Dated: December 14, 2011

17.3. Settlors now disclaim unhindered rights to reclaim, appoint or otherwise use any principal of this APT, or that may be transferred to this APT, to or for their benefit, their estate, their creditors, or their creditors' estate—subject, however, to the stipulations and terms otherwise provided under this Article.

17.4. **Settlors retain the right to receive all** *Distributable Net Income (DNI)* **of this APT for their joint lifetimes, and to the survivor of them for his/her lifetime, on at least an annual or more frequent basis**.

17.5. Subject to the stipulations and terms otherwise provided under this Article, Trustee may not reverse or re-assign any allocations of corpus/principal of this APT back to the Settlors.

17.6. NOTWITHSTANDING the above, in the event that an invasion of principal of this APT would then otherwise be allowable under Pennsylvania state (and federal) law—or

- 6 -

under the laws of Settlors' state-of-domicile if then other than Pennsylvania—<u>without</u> disturbing the full asset-preservation intent of this APT and Settlors are in personal need of additional funds over and above the income distributions provided herein to adequately care for their health, safety, and reasonable comfort, then Trustee may allocate portions of principal of this APT from time to time as may be necessary or appropriate in Trustee's unhindered discretion for Settlors' benefit when such needs are not being met by the DNI amounts (or other sources of income) allowable to Settlors under the terms of this APT.

(a)    In such case, Trustee may make principal distributions to enhance Settlor's provisions of food, clothing and shelter and other comforts if Trustee determines in its sole discretion that such distributions would be in Settlors' best interests but ONLY when taking into account the possible reduction or forfeiture of Medicaid (or other governmental) benefits that may result from any such distribution(s) event.

(b)    In such case, Trustee is authorized to make distributions for Settlors' benefit for payments of taxes, supplemental medical or therapeutic care, furniture and furnishings, adaptive aids, benefits overpayments (if any), and other such items as might be reasonably calculated to enhance the quality of Settlors' life but only, however, if such distributions do not affect the level of the governmental aid and entitlements that would otherwise inure to Settlors or to supplant or replace any governmental aid or other public entitlement funds that may be endowed for their benefit through the establishment of this APT. *To reaffirm: Trustee is not authorized to make any distributions for Settlors' benefit that would otherwise jeopardize Settlors' qualification to receive governmental aid benefits.*

*        *        *

17.7. …

*        *        *

(b)    If real estate, or other like assets customarily owned and transferred by deed are to be transferred to the

APT, then the Settlors (or Trustee) shall transfer and deed such real estate, or other like assets, to such Trustee (who is then the appointee to serve as Trustee after the resignation, incapacitation or death of the surviving Settlor—as defined per Article Nine, *supra*) of the Revocable Living Trust prescribed herein. Notwithstanding, the undersigned, and/or other individuals, may transfer real property directly to the APT.

(c) NOW THEREFORE, any and all such assets/funds/real estate transferred from the Revocable Living Trust to the APT or directly to the APT outside of the Revocable Living Trust Estate shall be transferred and assigned to—

**CHRISTOPHER A. MARTIN**
**Trustee of the**
**DANIEL R. & SUSAN L. PAUL**
**IRREVOCABLE ASSET PROTECTION TRUST**
**Dated: December 14, 2011.**

\* \* \*

17.9. …

\* \* \*

(b) The vested beneficiary(s) of the APT, the proportionate, distributable amounts of income…shall be defined, determined and designated as provided in Article Eight (*supra*) of this Trust as amended thereto but **irrevocably vested**, notwithstanding subsequent amendments to said Trust, as to the initial funding date of this APT.

\* \* \*

17.10. The APT beneficiary(s) so designated to receive portions or all of Settlors' revocable Trust Estate and portions or all of Settlors' irrevocable APT Trust Estate (as per this Article) shall be determined and identified as provided in Article Eight (*supra*) and such **designation(s) shall become <u>irrevocable</u>** as pertaining to the assets of this APT upon the initial funding of the APT.

* * *

(Daniel R. and Susan L. Paul Family Trust, dated 12/14/11, at 1-37; R.R. at 267a-303a) (some emphasis in original; emphasis within provisions added).

On February 27, 2012, Appellant and Mr. Paul executed a deed conveying the Atta Farm property to Appellee Christopher A. Martin, as trustee of the APT, and put the Atta Farm property in the APT, pursuant to the Family Trust provisions. After Mr. Paul died testate on May 30, 2013, Appellant administered Mr. Paul's estate as its personal representative. Following Mr. Paul's death, the relationship between Appellant and Appellee Christopher A. Martin deteriorated, resulting once in police intervention for an alleged theft.

On September 10, 2013, Appellant ostensibly executed a Restatement of the Family Trust ("Restated Trust"). The preamble segment of the Restated Trust provided, in relevant part, as follows:

**REVOCABLE LIVING TRUST**

**RESTATEMENT**
**(of the)**

**DANIEL R. & SUSAN L. PAUL FAMILY TRUST**
**Dated: December 14, 2011**

BE IT KNOWN that **SUSAN L. PAUL**, the undersigned, …, has previously established a (Co-Grantor) Revocable Living Trust with her now deceased spouse—*Daniel R. Paul—Dated:* ***December 14, 2011***, wherein she and her now deceased spouse declared themselves as the Grantors/Settlors of said Trust and reserved the right and privilege therein as to the survivor of them to revoke, amend, restate, or rename any and all provisions of said Trust, ***insofar, however, and only the extent which***

- 9 -

> *pertains to those assets and/or the value(s) thereof held in said Trust deemed under the surviving spouse's general power of appointment control.*
>
> WHEREAS, the undersigned Settlor now desires to amend said Trust in many specifics and believes that the amendment(s) would be understood more easily if the Trust Agreement were RESTATED in its entirety **subject to the terms described above**.
>
> NOW THEREFORE, the undersigned Settlor hereby exercises such rights and privileges of restatement and now amends and restates said Trust [and] all amendments thereto—as provided by the Declaration:
>
> I, **Susan L. Paul**, the undersigned, declare that I am now the *Surviving Spouse/Settlor* of that certain revocable Declaration of Trust Agreement referred to and known as the—
>
> ### DANIEL R. & SUSAN L. PAUL FAMILY TRUST, Dated: December 14, 2011
>
> and that I have elected, within compliance to applicable provisions therein, to amend said Trust by only to the extent of the **general power of appointment** that I have retained as the Surviving Spouse/Settlor of said, Trust, to wit:
>
> WHEREAS, under said Trust Declaration, the Settlors reserved the right of revocation and/or amendment to any and all Articles to said Trust while both were alive—and reserved as much to the surviving Settlor as to the extent of the general power of appointment that maybe retained by the Surviving/Spouse/Settlor—including the right to change *beneficiary allocation(s)/designation(s)*; NOW, therefore, pursuant to such authority I hereby amend said trust and RESTATE said Trust, and all amendments thereto….
>
> \*    \*    \*

(Restatement of the Daniel R. and Susan L. Paul Family Trust, dated 12/14/11, at 1; R.R. at 315a) (emphasis in original). In large part, the terms of the

Restated Trust are substantially and materially the same as the terms of the original Family Trust.  The most striking change accomplished by the Restated Trust, however, was to remove Appellee Christopher A. Martin as trustee and to name Cory W. Martin successor trustee of the Restated Trust and trustee of the APT.  Notwithstanding the preamble set forth in the Restated Trust, Appellant essentially "modified" the original Family Trust/APT to remove Appellee Christopher A. Martin as trustee of the APT and name Cory W. Martin as new trustee of the APT.[1]

Acting on his new position, Cory W. Martin executed a quit claim deed on August 3, 2014, purporting to transfer the Atta Farm property from "**CORY W. MARTIN, Trustee of the DANIEL R. PAUL & SUSAN L. PAUL IRREVOCABLE ASSET PROTECTION TRUST Dated December 14, 2011, <u>Grantor</u>**" to "**DANIEL R. PAUL AND SUSAN L. PAUL, Trustees of the DANIEL R. & SUSAN L. PAUL FAMILY TRUST, Dated: December 14, 2011, <u>Grantees</u>**."  (Quit Claim Deed, dated August 3, 2014, at 1; R.R. at 521a).  Subsequently, Appellant executed a quit claim deed on July 6, 2015, appearing to transfer the Atta Farm property from "**SUSAN L. PAUL, Surviving Trustee of the DANIEL R. & SUSAN L. PAUL FAMILY TRUST,**

_____

[1] Pennsylvania law precludes beneficiaries of trust from removing trustees under the guise of "modifying" a trust.  ***See Trust Under Agreement of Taylor***, 640 Pa. 629, 164 A.3d 1147 (2017) (holding exclusive means of removal of trustee of noncharitable irrevocable trust is UTA provision for removal of trustee at 20 Pa.C.S.A. § 7766, absent power retained *via* portability clause in trust).

**Dated: December 14, 2011, <u>Grantor</u>**" to "**CORY W. MARTIN, Trustee of the DANIEL. R. PAUL & SUSAN L. PAUL IRREVOCABLE ASSET PROTECTION TRUST Dated December 14, 2011, <u>Grantee</u>**." (Quit Claim Deed, dated July 6, 2015, at 1; R.R. 526a).

On August 17, 2016, Appellee Christopher A. Martin filed a petition against Appellant and Cory W. Martin to remove Cory W. Martin as the trustee of the APT and direct that the Atta Farm property remain an asset of the APT. Appellant and Cory W. Martin filed an answer, new matter, and counterclaim petition on October 18, 2016, seeking to modify/and or terminate the original Family Trust and/or APT. On November 15, 2016, Appellee Christopher A. Martin filed an answer and new matter to the counterclaim petition. That same day, during a status conference, Appellant and Cory W. Martin indicated they wanted to sell the Atta Farm property and place the proceeds of the sale into investments for the benefit of Appellee Christopher A. Martin, if the court determined he was entitled to those proceeds.

The court conducted a bench trial on July 13, 2017, during which it heard testimony from, *inter alia*, Appellee Christopher A. Martin, Appellant, and Mary Dautel, a family friend of the parties. At trial, Appellee Christopher A. Martin testified on his own behalf that he had a falling out with Appellant in the 1990's or 2000, after which he did not speak to Appellant and Mr. Paul for ten or eleven years. Appellee Christopher A. Martin said he reconnected with Appellant and Mr. Paul approximately in 2008, when he moved in with them.

- 12 -

After Appellant and Mr. Paul purchased the Atta Farm property, Appellee Christopher A. Martin and his wife lived at Atta Farm while the Company operated a horse boarding business on the farm.

Appellee Christopher A. Martin again had a falling out with Appellant after Mr. Paul died. While Appellee Christopher A. Martin and his wife were still living on the Atta Farm property, Appellee's brother, Cory W. Martin, removed a flatbed trailer from the farm property. Appellee Christopher A. Martin reported the incident to the police, who found the trailer at the residence of Appellant, with whom Cory W. Martin lived, and arrested Appellant and Cory W. Martin for stealing the equipment. Appellee Christopher A. Martin did not renew the lease on Atta Farm and received a notice from Appellant's counsel in September 2014, to vacate the property in thirty days. By October 7, 2014, Appellee Christopher A. Martin and his wife left the Atta Farm property. (*See* N.T. Trial, 7/13/17, at 6-129).

Appellant also testified at trial. Appellant said she and Appellee Christopher A. Martin had a tumultuous relationship. They fell out in 1993, after which they did not speak again until 2009. In January 2012, Appellant attempted to punch Appellee Christopher A. Martin after the two had a verbal altercation. In early 2013, Appellee Christopher A. Martin put out to pasture one of Appellant's horses boarded at Atta Farm, because Appellant had been late several times to pay the $450.00 monthly boarding fee. After Mr. Paul died in May 2013, Appellee Christopher A. Martin would not speak to

Appellant. Appellant explained she believed she owned the trailer that Cory W. Martin had taken from the Atta Farm property in May 2014. Appellant stated Appellee Christopher A. Martin reported the incident to police and had Appellant and Cory W. Martin arrested, even though Appellee Christopher A. Martin knew they merely intended to borrow the trailer. In September 2014, Appellant sent Appellee Christopher A. Martin an eviction notice. Appellant explained that, when Appellee and his wife left Atta Farm, they wrongfully took with them household items, furniture, appliances, and vehicles that belonged to Appellant.

Appellant acknowledged she formed the Restated Trust in September 2013, to remove Appellee Christopher A. Martin as trustee of the APT and replace him with Cory W. Martin as trustee. Appellant claimed the August 3, 2014 quit claim deed purporting to transfer the Atta Farm property from the APT to her, as trustee of the Family Trust, was just a mistake, because she knew she could not remove an asset from the APT which was also an irrevocable trust. Appellant said she ameliorated the error when she executed the July 6, 2015 quit claim deed, appearing to convey the Atta Farm property to Cory W. Martin, as trustee of the APT. Appellant explained she had intended to keep the Atta Farm property in the APT, despite the Restated Trust and the 2014 quit claim deed. (*See id.* at 145-197).

Finally, Mary Dautel, an acquaintance of the Paul/Martin family, testified. Ms. Dautel stated she had visited the Atta Farm property often

before Appellee Christopher A. Martin and his wife vacated the property. Immediately after Appellee Christopher A. Martin learned that Cory W. Martin had taken the trailer from the Atta Farm property in May 2014, Appellee Christopher A. Martin asked Ms. Dautel to go to Atta Farm to protect Appellee Christopher A. Martin's wife because he feared Cory W. Martin would retaliate against them after police arrived at Appellant's residence. Appellee Christopher A. Martin told Ms. Dautel he was having Cory W. Martin and Appellant arrested for taking the trailer. Subsequently, Appellee Christopher A. Martin asked permission from Ms. Dautel to place several of his vehicles on her property to hide them from Cory W. Martin and Appellant. (**See id.** at 199-207).

Following trial, Appellant filed a post-trial brief on August 3, 2017, asserting, *inter alia*, the Orphans' Court should remove Appellee Christopher A. Martin as trustee of the APT pursuant to 20 Pa.C.S.A. § 7766, because he harbored personal animosity toward Appellant. On January 2, 2018, the Orphans' Court entered an opinion and verdict, which declared the Atta Farm property irrevocably part of the APT. The decision then holds: "[T]he Court finds as follows: Christopher [A.] Martin had an irrevocable vested interest in the Atta Farm once the property [was] transferred to the Irrevocable Trust. Ownership of the Atta Farm [property] must properly be transferred to Christopher [A.] Martin." (**See** Opinion and Verdict, filed January 2, 2018, at 6.)

Appellant timely filed a notice of appeal on January 16, 2018; Cory W. Martin is not a party to this appeal. The Orphans' Court ordered Appellant on January 29, 2018, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant timely complied on February 9, 2018.

Appellant raises the following issues for our review:

> DID THE HONORABLE TRIAL COURT COMMIT AN ERROR OF LAW AND/OR AN ABUSE OF DISCRETION BY REMOVING THE ATTA FARM FROM THE [APT] AND AWARDING IT TO [APPELLEE]?
>
> DID THE HONORABLE [TRIAL] COURT COMMIT AN ERROR OF LAW AND/OR AN ABUSE OF DISCRETION IN FAILING TO ADDRESS THE REMOVAL OF [APPELLEE] AS TRUSTEE OF THE DANIEL R. PAUL AND SUSAN L. PAUL REVOCABLE LIVING TRUST AND IRREVOCABLE ASSET PROTECTION TRUST?
>
> DID THE HONORABLE [TRIAL] COURT COMMIT AN ERROR OF LAW AND/OR AN ABUSE OF DISCRETION BY FAILING TO ADDRESS THE REQUEST TO SELL [THE] ATTA FARM AND DETERMINE THE ALLOCATION OF THE PROCEEDS FROM SAID SALE?

(Appellant's Brief at 4).

Our review on appeal implicates the following principles:

> Our standard of review of the findings of an [O]rphans' [C]ourt is deferential.
>
> > When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

- 16 -

> However, we are not constrained to give the same deference to any resulting legal conclusions.
>
> *In re Estate of Harrison*, 745 A.2d 676, 678-79 (Pa.Super. 2000), *appeal denied*, 563 Pa. 646, 758 A.2d 1200 (2000) (internal citations and quotation marks omitted). "[T]he Orphans' [C]ourt decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Luongo*, 823 A.2d 942, 951 (Pa.Super. 2003), *appeal denied*, 577 Pa. 722, 847 A.2d 1287 (2003).

*In re Estate of Whitley*, 50 A.3d 203, 206-07 (Pa.Super. 2012), *appeal denied*, 620 Pa. 724, 69 A.3d 603 (2013).

In her issues combined, Appellant argues she still has a vested interest in the Atta Farm property as a beneficiary of the APT. Appellant insists she will not receive income from the APT, under the Orphans' Court ruling, which frustrates the purpose of the APT. Appellant interprets the court's ruling as giving ownership of the Atta Farm property to Appellee Christopher A. Martin, because he is a vested beneficiary of the APT. Appellant asserts, however, that the APT grants Appellee Christopher A. Martin ownership of the Atta Farm property only upon Appellant's death. Appellant contends the Orphans' Court erred when it gave Appellee Christopher A. Martin immediate ownership of the Atta Farm property.

Appellant further complains the Orphans' Court failed to rule on her request to remove Appellee Christopher A. Martin as trustee of the APT under Section 7766 of the Uniform Trust Act ("UTA"), 20 Pa.C.S.A. §§ 7701-7799.3. Appellant avers the Orphans' Court also failed to address Appellant's plea for

a court-ordered sale of the Atta Farm property and allocation of the sale among the trust beneficiaries. Appellant concludes this Court should reverse the Orphans' Court's decision to give Appellee immediate ownership of the Atta Farm property and remand for the removal of Appellee Christopher A. Martin as trustee of the APT and for an order to sell the Atta Farm property. For the following reasons, we grant some limited relief.

As a prefatory matter, "the appealability of an order directly implicates the jurisdiction of the court asked to review the order." *Estate of Considine v. Wachovia Bank*, 966 A.2d 1148, 1151 (Pa.Super. 2009). "Accordingly, this Court has the power to inquire at any time, *sua sponte*, whether an order is appealable." *Id.*; *Stanton v. Lackawanna Energy, Ltd.*, 915 A.2d 668, 673 (Pa.Super. 2007). Pennsylvania Rule of Appellate Procedure 342 enumerates Orphans' Court orders which are immediately appealable as of right and provides, in relevant part, as follows:

> **Rule 342. Appealable Orphans' Court Orders**
>
> **(a) General rule.** An appeal may be taken as of right from the following orders of the Orphans' Court Division:
>
> (6) An order determining an interest in real or personal property;

Pa.R.A.P. 342(a)(6). The Note following Rule 342 provides, in part:

> In order to facilitate orderly administration of estates, trusts and guardianships, the 2011 amendments list certain orders that will be immediately appealable without any requirement that the Orphans' Court make a determination of finality. Orders falling within subdivisions (a)(1)-(7) no longer require the lower court to make a determination of

finality.

Pa.R.A.P. 342 *Note*. Rule 342(c) states: "**Waiver of objections.** Failure to appeal an order that is immediately appealable under paragraphs (a)(1)-(7) of this rule shall constitute a waiver of all objections to such order and such objections may not be raised in any subsequent appeal." Pa.R.A.P. 342(c). Further, the Orphans' Court Rules have eliminated the need for post-trial motion practice. **See** Pa.O.C.R. 8.1 (effective 9/1/16) (stating: "Except as provided in Rule 8.2, no exceptions or post-trial motions may be filed to any order or decree of the court").

Instantly, in its January 2, 2018 decision, the Orphans' Court determined Appellee Christopher A. Martin held an irrevocably vested interest in the Atta Farm property. To the extent the Orphans' Court decision appears to grant current ownership of the Atta Farm property to Appellee Christopher A. Martin, the order is immediately appealable.[2] **See** Pa.R.A.P. 342(a)(6). Accordingly, we address only Appellant's first issue regarding "ownership" of the Atta Farm property.

The Orphans' Court, however, did not directly rule on Appellant's claim to remove Appellee Christopher A. Martin as trustee of the APT under Section

---

[2] **See, e.g., In re Estate of Krasinski**, 188 A.3d 461 (Pa.Super. 2018), *appeal granted*, 198 A.3d 1045 (Pa. 2018) (holding order confirming fiduciary's sale of real property during estate administration is immediately appealable under Rule 342(a)(6) because court confirmation and approval of sale determines interests in real property sold).

7766 of the UTA or Appellant's request to compel the sale of the Atta Farm property and distribute the proceeds to the beneficiaries. Therefore, Appellant's issues on appeal concerning these matters are premature. *See* Pa.R.A.P. 342(a)(1), (a)(5) (governing distributions of trust and status of fiduciaries, respectively). Accordingly, we quash the appeal as to Appellant's issues two and three.

"A trust is a fiduciary relationship; one person holds a property interest subject to an equitable obligation to hold or use that interest for the benefit of another." ***Rebidas v. Murasko***, 677 A.2d 331, 333 (Pa.Super. 1996). "Generally, a trust executed without reservation of power by a settlor to revoke or reform the trust is irrevocable. An irrevocable trust may be rescinded by the settlor, however, if it is demonstrated that the trust was created through fraud, duress, undue influence, or mistake." ***Id.*** at 333 (internal citations omitted).

"[T]he interpretation of a trust or a will presents a question of law. As such, our standard of review is *de novo,* and our scope of review is plenary." ***In re Estate of McFadden***, 100 A.3d 645, 650 (Pa.Super.2014) (*en banc*) (citations omitted).

> When interpreting a trust agreement, the intent of the settlor is paramount, and if that intent is not contrary to law, it must prevail. In order to ascertain the intent of the settlor, the court must examine: "(a) all the language contained in the four corners of the instrument[;] (b) the distribution scheme[;] (c) the circumstances surrounding the testator or settlor at the time the will was made or the trust was created[;] and (d) the existing facts." ***In re***

*Scheidmantel*, 868 A.2d 464, 488 (Pa.Super. 2005) (internal punctuation and citations omitted).

*In re Cohen*, 188 A.3d 1208, 1214 (Pa.Super. 2018) (some internal citations omitted). "[T]he settlor's intent must be ascertained from the language of the trust, and we give effect, to the extent possible, to all words and clauses in the trust document." *In re Estate of Loucks*, 148 A.3d 780, 782 (Pa.Super. 2016). Courts "are not permitted to construe a provision in a trust so as 'to destroy or effectually nullify what has always been considered the inherent basic fundamental right of every owner of property to dispose of h[er] own property as [s]he desires, so long as it is not unlawful.'" *Id.* (quoting *Estate of Pew*, 655 A.2d 521, 533 (Pa.Super. 1994)).

Pennsylvania's UTA governs trusts in this jurisdiction and defines "beneficiary" and "qualified beneficiary" as follows:

### § 7703.  Definitions – UTC 103

\* \* \*

**"Beneficiary."**  A person that:

(1)   has a present or future beneficial interest in a trust, vested or contingent; or

(2)   in a capacity other than that of trustee or protector, holds power of appointment over trust property.

\* \* \*

**"Current beneficiary."**  A person 18 years of age or older to or for whom income or principal of a trust must be distributed currently or a person 25 years of age or older to or for whom income or principal of a trust may, in the trustee's discretion, be distributed currently.

* * *

**"Qualified beneficiary."** Assuming nonexercise of all testamentary powers of appointment, a beneficiary who on the date the beneficiary's qualification is determined:

(1)  is a distributee or permissible distributee of trust income or principal;

(2)  would be a distributee or permissible distributee of trust income or principal if the interests of the distributees described in paragraph (1) terminated on that date; or

(3)  would be a distributee or permissible distributee of trust income or principal if the trust terminated on that date.

* * *

20 Pa.C.S.A. § 7703. Several provisions of the UTA govern modification of an irrevocable trust under certain circumstances, *e.g.*, Section 7740.1 provides, in relevant part:

> **§ 7740.1. Modification or termination of noncharitable irrevocable trust by consent – UTC 411**
>
> **(a) Consent by settlor and beneficiaries.—**A noncharitable irrevocable trust may be modified or terminated upon consent of the settlor and all beneficiaries even if the modification or termination is inconsistent with a material purpose of the trust.  A settlor's power to consent to a trust's modification or termination may be exercised by a guardian, an agent under the settlor's general power of attorney or an agent under the settlor's limited power of attorney that specifically authorizes that action.  Notwithstanding Subchapter C (relating to representation), the settlor may not represent a beneficiary in the modification or termination of a trust under this subsection.
>
> **(b)  Consent by beneficiaries with court approval.—**A

noncharitable irrevocable trust may be modified upon the consent of all the beneficiaries only if the court concludes that the modification is not inconsistent with a material purpose of the trust. A noncharitable irrevocable trust may be terminated upon consent of all the beneficiaries only if the court concludes that continuance of the trust is not necessary to achieve any material purpose of the trust.

\* \* \*

**(d) Consent by some beneficiaries with court approval.**—If not all the beneficiaries consent to a proposed modification or termination of the trust under subsection (a) or (b), the modification or termination may be approved by the court only if the court is satisfied that:

(1) if all the beneficiaries had consented, the trust could have been modified or terminated under this section; and

(2) the interests of a beneficiary who does not consent will be adequately protected.

20 Pa.C.S.A. 7740.1(a)-(b), (d). Section 7740.2 provides, in part:

**§ 7740.2. Modification or termination of noncharitable irrevocable trust by court - UTC 412**

**(a) Unanticipated circumstances.—**The court may modify the administrative or dispositive provisions of a noncharitable irrevocable trust, make an allowance from the principal of the trust or terminate the trust if, because of circumstances that apparently were not anticipated by the settlor, modification, allowance or termination will further the purposes of the trust. To the extent practicable, the modification or allowance shall approximate the settlor's probable intention.

**(b) Inability to administer effectively.—**The court may modify the administrative provisions of a noncharitable irrevocable trust if adherence to the existing provisions would be impracticable or wasteful or impair the trust's administration.

* * *

20 Pa.C.S.A. 7740.2(a)-(b).

Instantly, the record makes clear the original settlors (Appellant and Mr. Paul) established a Family Trust, which became a noncharitable, irrevocable trust upon the death of Mr. Paul. Likewise, Mr. Paul's death set into motion the various restrictions on amendments, modifications, or removals of a trustee of the Family Trust. The APT was a sub-trust in the Family Trust and held the Atta Farm property as an asset of the sub-trust. The APT is also a noncharitable irrevocable trust and identifies Appellee Christopher A. Martin as an irrevocable beneficiary of the APT. While Appellant is still alive, however, Appellee Christopher A. Martin's role regarding the Atta Farm property is limited to trustee with a vested beneficial interest in the APT. After Appellant dies, then Appellee Christopher A. Martin will have a direct ownership interest in the Atta Farm property, according to the trust documents. Meanwhile, Appellee Christopher A. Martin has no immediate ownership right to the Atta Farm property, which remains an irrevocable APT asset until Appellant's death.

Several provisions of the APT dictate Appellant's right to continue to receive regular and lifetime distributions from the APT and when the APT trustee must make those distributions. (***See*** Article 17.4 of the APT; R.R. at 299a.) Additionally, Articles 17.6, 17.6(a), 17.6(b), and 17.9 authorize the APT trustee to supplement distributions from the APT trust to the APT settlors to support their health, safety, and comfort, or in the event the settlors

become mentally or medically incapacitated. **See** Articles 17.6, 17.6(a), 17.6(b), and 17.9; R.R. at 299a, 300a.) Therefore, Appellant, as the only surviving settlor, is entitled to distributions from the APT during her lifetime. **See In re Cohen, supra**. While Appellant lives, she is a current beneficiary of the APT, which contains the Atta Farm property as an asset. Appellee Christopher A. Martin is entitled to ownership of the Atta Farm property only after Appellant's death. **See** 20 Pa.C.S.A. § 7703; **In re Estate of Loucks, supra**; **In re Estate of McFadden, supra**.

Based upon the foregoing, the record belies Appellant's argument that **she** has an immediate ownership interest in the Atta Farm property. **See In re Cohen, supra**; **In re Estate of Whitley, supra**. Rather, Atta Farm remains an asset of the APT until Appellant's death. **See In re Cohen.** Accordingly, we vacate the Orphans' Court's order, because it purports to award immediate and direct ownership of the Atta Farm property to Appellee Christopher A. Martin, and remand for clarification or correction. We quash the appeal as to Appellant's issues two and three and remand for further proceedings.

Order vacated; appeal quashed in part. Case is remanded to the Orphans' Court for clarification or correction of order and for further proceedings. Jurisdiction is relinquished.

President Judge Emeritus Ford Elliott joins this memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>04/03/2019</u>